UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:12-cr-146 |
| | ) | *Mattice / Lee* |
| JAMES A. BURKE, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Before the Court is a motion for disclosure of identity of confidential informant [Doc. 23] filed by Defendant James A. Burke ("Defendant") on March 26, 2013. Defendant seeks disclosure of the identity of a confidential informant referenced in the discovery material as "Player X" ("the CI") who provided law enforcement with some information leading to the charges brought against Defendant.[1] For the reasons discussed below, Defendant's motion for disclosure [Doc. 23] will be **DENIED**.

**I.    BACKGROUND**

Defendant is charged in a two count indictment: Count One charges Defendant with taking part in a conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base from 2007 to 2011, and Count Two charges Defendant with possessing with intent to distribute 28 grams or more of cocaine base on or about March 3, 2011 [Doc. 1]. Defendant was previously

---

[1] As a result of the looming trial date, the Government was ordered to file a slightly expedited response to the motion for disclosure by noon on Monday, April 8, 2013, and an evidentiary hearing on the motion was scheduled for Tuesday, April 9, 2013 [Doc. 26]. After the Government inexplicably failed to file any response by the deadline, the Court ordered the Government to show cause for its failure to comply with the Court's order [Doc. 27]. The Government subsequently filed a response to the show cause order and motion for extension of time to file [Doc. 28] and its response [Doc. 29]. As Defendant did not object to the Government's motion for an extension of time, the Government's motion for an extension of time [Doc. 28] was granted at the hearing and the Court will consider its response.

charged with the same counts in Criminal Case No. 1:11-cr-22,[2] but the indictment was dismissed without prejudice on the basis of Speedy Trial Act violations [Criminal Case No. 1:11-cr-22, Doc. 52]. Earlier in the prior case, Defendant filed a motion to suppress [Criminal Case No. 1:11-cr-22, Doc. 21], which was denied [Criminal Case No. 1:11-cr-22, Docs. 33 & 46]. After Defendant was subsequently indicted in this case, and upon Defendant's motion, the pleadings from the prior case were incorporated into this case [Docs. 11 & 17]; thus, all rulings from the prior case still hold in this action and the facts found in the Report and Recommendation on the prior motion to suppress [Criminal Case No. 1:11-cr-22, Doc. 33], all of which were accepted and adopted by the District Judge [Criminal Case No. 1:11-cr-22, Doc. 46], will stand.

The Court held a hearing on the instant motion on April 9, 2013. During the hearing, Defendant and the Government stipulated to the accuracy of a transcript of a portion of an audio recording between the CI and Agent Eric Allman, as reproduced in Defendant's brief [Doc. 24-1 at PageID# 51 n. 1; Exh. 1]. Defendant also guided the Court through various investigative reports disclosed through discovery to establish instances in which the CI participated in events independently of police involvement, called the police to report observations of drug-related activity not otherwise verified by law enforcement, and was the source of identification of Defendant or Defendant's car during various transactions [Exh. 2]. Defendant pointed out that law enforcement had lost video or audio recordings referenced in the investigative reports and that he had received only one audio recording at issue, referenced above, which contains statements made by the CI

---

[2] The Indictment in Criminal Case No. 1:11-cr-22 contained three counts – in addition to the two counts that are charged in the instant case, there was an additional count charging Defendant with distributing five grams or more of cocaine base on or about January 14, 2010 [Criminal Case No. 1:11-cr-22, Doc. 5]. This count arose from a controlled buy conducted with the CI at issue in this motion.

2

which Defendant contends are indicative of the CI's alleged vendetta or grudge against Defendant. Defendant contends the CI's vendetta motivated the CI's participation in the investigation against him. Defendant also took the stand to testify as to a text message he received on his birthday, March 6, 2010, from an unknown individual who texted something along the lines of "Happy Birthday, you sorry son of a bitch. I got over 200 indictments on you, enough to get you a life sentence." On cross examination, Defendant did not know if the text message was still on his phone, did not recall if he wrote down the number associated with the message, and admitted he had not been charged with 200 indictments.

The Government introduced testimony of Special Agent Bryan Freeman with the Tennessee Bureau of Investigation, who testified the investigation of Defendant began in early 2009, prior to the involvement of the CI, after another investigation into cocaine and cocaine base trafficking in McMinn County and surrounding areas resulted in indictments of approximately 20 people. Some of these individuals chose to cooperate with law enforcement and, during interviews, some of these cooperating individuals identified Defendant as having some involvement in cocaine drug transactions and Defendant was positively identified by individuals who were personally familiar with him.

As a result of information obtained through these interviews, Agent Freeman – who had previously arrested Defendant in the early 1990s and found crack cocaine in Defendant's car – began documenting current information about Defendant and the individuals potentially associated with his drug-related activity in July 2009. Later in the course of the investigation into Defendant, a controlled buy between the CI and Defendant was conducted, law enforcement conducted surveillance of Defendant and performed trash pulls, and a search warrant for Defendant's residence

3

was executed on March 3, 2011. At the time the search warrant was executed, Defendant waived his *Miranda* rights and confessed to possessing and distributing crack cocaine for an extended period of time and a large crack "cookie" was discovered in Defendant's home.[3] Agent Freeman testified that "Player X" was not the only CI involved in the investigation into Defendant, as another confidential source had also observed Defendant with crack cocaine in a residence and this source was referenced in the affidavit submitted in support of the search warrant.

The Government indicated it was not planning to have the CI testify at trial, was not planning to put on any evidence of various transactions in which the CI was involved except for the controlled buy on January 14, 2010, and was not planning to introduce certain evidence of other information contained in some of the investigative reports, including evidence of a photo lineup in which the CI identified Defendant and an attempted, but ultimately unsuccessful, controlled buy involving the CI.

**II.     ANALYSIS**

The government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957)); *United States v. Dexta*, 136 F. App'x 895, 904 (6th Cir. 2005). The purpose of this privilege is to further and protect the public interest in effective law enforcement. The privilege recognizes an obligation of citizens to communicate their knowledge about the commission of a crime to the police and, "by preserving their anonymity, encourages them to perform that obligation." *Roviaro*, 353 U.S. at 59. The government's privilege, however, must

---

[3] The full facts and circumstances surrounding the execution of the search warrant and the waiver of Defendant's *Miranda* rights are outlined in more detail in the Report and Recommendation on Defendant's motion to suppress in the prior case [Criminal Case No. 1:11-cr-22, Doc. 33]. The crack "cookie" discovered in Defendant's home provided the basis for Count Two of the Indictment.

4

yield "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause." *Id.* at 60-61.

It is the defendant's burden to show how disclosure of the confidential informant's identity would substantively assist his defense. *Dexta*, 136 F. App'x at 904. "'Mere conjecture or supposition about the possible relevancy of the confidential informant's testimony is insufficient to warrant disclosure.'" *Id.* (quoting *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985). The identity of a confidential informant must be disclosed only where the defendant shows "'that disclosure is essential to a fair trial.'" *Id.* (quoting *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992)). In making the decision whether to require disclosure of the identity of a confidential informant, the Court is required to balance the public interest in protecting the flow of information to law enforcement against a defendant's need for disclosure of the confidential informant's identity in order to prepare his defense. *Dexta*, 136 F. App'x at 904. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62. Where the confidential informant was an active participant in the events underlying a defendant's criminal liability, disclosure has usually been required. *Dexta*, 136 F. App'x at 905 (citing *Sharp*, 778 F.3d at 1185 n.2). On the other hand, where the confidential informant was a mere tipster or introducer and not a participant, a request for disclosure of the identity of the confidential informant is usually denied. *Id.* "Importantly, if the evidence on which the defendant was convicted was obtained personally by the government agents who testified, disclosure is not required." *Id.*

Essentially, therefore, there are three factors to consider: (1) the level of involvement of the confidential informant in the criminal activity charged; (2) the helpfulness of the disclosure to the defense; and (3) the government's (and public's) interest in non-disclosure. *Id.* at 904.

Defendant asserts the CI actively participated in drug transactions which gave rise to Defendant's Indictment without the participation of any police officers; that is, the transactions were arranged by the CI without law enforcement supervision, the narrative of what occurred in the transactions comes solely from the CI, and no funds were recovered by the police [Doc. 24-1 at PageID# 49-50]. There is no independent record of what occurred during certain transactions because digital photos and recordings have been lost or destroyed while in police custody, and Defendant claims the police did not maintain visual surveillance of the parties; did not identify Defendant as being present; did not search the parties involved; did not witness the exchange of money for drugs; did not observe Defendant give the CI drugs or take money from the CI; and did not see funds in Defendant's possession [*id.* at PageID# 50]. Defendant contends the allegations of the CI are not corroborated in any manner and have been relied upon without question by law enforcement, even though there is no report or affidavit setting forth the credibility and reliability of this CI or historical accuracy of information reported by the CI, who was the only witness to the alleged operations and drug transactions documented in police reports [*id.* at PageID# 50-51]. Defendant further asserts there is clear evidence indicating the CI had a personal interest in creating a case against Defendant and references an audio recording between the CI and another individual in which the CI speaks about "getting" Defendant [*id.* at PageID# 51]. Defendant argues that given the extent of the CI's involvement in the case, his numerous encounters with Defendant without police presence, and the evidence of a personal reason that might be motivating the CI's actions, the

6

disclosure of the CI's identity is necessary for Defendant to receive a fair trial [*id.* at PageID# 52]. Defendant further seeks information about the CI's criminal record, including pending charges or investigations, and financial or other arrangements to compensate the CI for cooperation [*id.*].

At the hearing, Defendant alleged that most of the investigation into Defendant was conducted by the CI from the beginning after the CI volunteered to work undercover against Defendant, and most of the reports that constitute discovery against Defendant contain independent actions or observations by the CI without law enforcement involvement or corroboration. Defendant argued that the substance and length of the investigation does not change the CI's heavy involvement in activities which led to charges against Defendant, and cited to a United States Court of Appeals for the Fifth Circuit case for the proposition that someone who has a grudge against the charged individual should be disclosed because, in order to have a fair trial, they must be questioned about their motives and what they chose to report about the individual.

The Government argues that Defendant has not met his burden of showing that disclosure of the CI would substantively assist his defense, and disclosure is therefore not appropriate [Doc. 29 at PageID# 64]. The Government claims that the CI never made a non-controlled buy from Defendant and was not involved in establishing probable cause for the search of Defendant's home, which gave rise to the charges in the Indictment [*id.* at PageID# 66-67]. As such, the controlled buys involving the CI did not result in Defendant's instant charges, and Defendant has not adduced any evidence supporting an entrapment defense that might require disclosure [*id.* at PageID# 67]. At the hearing, the Government argued that the primary evidence upon which it will rely to make its case against Defendant is evidence obtained during the execution of the search warrant and Defendant's admissions during his interview, which form the basis for both counts in the Indictment.

7

The Government asserted the only evidence it would seek to use which stemmed from the use of the CI was about one controlled buy, and that buy was not included as a substantive count in the current Indictment. Although the Government acknowledged information about CI-related transactions was used as background information in the search warrant, the Government indicated this background information was stale and would not have supported probable cause for the search warrant by itself. As a result, the Government argued the CI was not a participant in the crimes charged and disclosure would not be essential to a fair trial.

Based on the evidence presented at the hearing, it is apparent the CI was involved in controlled buys with Defendant, reported various independent observations and alleged phone conversations with Defendant to the police which were not necessarily corroborated by other information, and was clearly involved in the investigation into Defendant's drug activities to a certain extent. However, the Government's representations about the other evidence in the case and what evidence it plans to introduce at trial, contrasted with Defendant's burden to establish that disclosure is required for a fair trial, cast the necessity of disclosing the CI's identity into serious doubt. Considering the first factor noted above, it appears to be undisputed that the two counts now charged in the Indictment bear little relation to activities in which the CI was involved, and thus the CI was not strictly a "participant" in the crimes with which Defendant has been charged and instead functioned more as a "tipster" as part of a larger investigation. Specifically, as to the conspiracy charge in Count One, the Government has indicated it will not introduce the testimony of the CI or some of the other suspects involved in the controlled buy transactions, although it has indicated it will present the testimony of Agent Allman, who attended at least one controlled buy between the

CI and Defendant.[4] Moreover, it appears likely that a significant basis for the conspiracy charge will be Defendant's own admissions as to his drug activity. Agent Freeman testified briefly to statements Defendant made during the interview, which the Court previously learned lasted for one and one-half hours [Criminal Case No. 1:11-cr-22, Doc. 33 at PageID# 93].[5] The evidence forming the basis for Count Two of the Indictment was discovered solely by government agents who will presumably testify concerning the execution of the search warrant and discovery of the crack "cookie" which gave rise to that count. The identity of the CI bears almost no relation to this charge and it is unlikely any information about the CI would be relevant for the Government to present proof on this charge. As noted above in *Dexta*, disclosure of a confidential informant is typically not required where the evidence was obtained personally by government agents who testified at trial. Accordingly, the first factor weighs against disclosure of the CI, who was not an active participant in the bulk of the activities or information which gave rise to the two charges against Defendant.

---

[4] Agent Allman worked undercover at times and also conducted surveillance of Defendant, and presumably would testify to his own independent knowledge of the events which took place during the controlled buy. Naturally, Agent Allman's testimony will be subject to cross-examination on what he actually observed during this transaction.

[5] The undersigned previously found, and the District Judge accepted and adopted, the following facts relating to Defendant's interview:

> In response to the questions posed mostly by Freeman, but also posed by [ATF Agent Brian] Musgrave who returned to the interrogation soon after the [*Miranda* waiver] Form was signed, Defendant confessed to possessing crack later found in his home and he admitted to drug dealing activities. When asked about his crack source, however, Defendant claimed he simply found the crack cookie which was discovered in the search of his home. Neither Musgrave or Freeman believed Defendant merely found the crack cookie.

[Criminal Case No. 1:11-cr-22, Doc. 33 at PageID# 93].

Given the basis for the two counts charged and representations by the Government as to the evidence to be introduced at trial, the second factor also weighs against disclosure, as it does not appear that disclosure of the CI will be particularly helpful to Defendant. Defendant may or may not already know the identity of the CI but, even if he does not, if the Government does not intend to introduce evidence of other information provided by the CI to police, evidence of the CI's identification of Defendant, or other controlled buys conducted with the CI, it is difficult to see how the CI's identity would be essential for Defendant's defense or endanger his ability to have a fair trial.[6] Simply put, the Government has indicated that the majority of the evidence it seeks to introduce at trial is not related to transactions with the CI or the CI's allegedly independent dealings with Defendant. If evidence relating to the CI's involvement in the investigation does not form the backbone of the Government's proof, it becomes far less likely that disclosure will serve a useful purpose for Defendant in the preparation of his defense.

Along those same lines, although Defendant has presented some weak evidence that could possibly indicate a "grudge" or "vendetta" by the CI against him and has argued the CI must be questioned about his motives in beginning or participating in the investigation against Defendant, none of the cases cited in Defendant's brief – all of which required the disclosure of a confidential

---

[6] Likewise, if evidence of the other controlled buys is not at issue, it is unlikely that the lost audio and video recordings of various other controlled buys conducted between the CI and Defendant bear any relevance to Defendant's defense – at least not in a way that would necessitate disclosure of the CI for any information or testimony on these other buys. Agent Freeman testified he watched or listened to parts of the recordings at some time after the transactions took place, but they were digital and were lost when the computer they were kept on crashed. It would certainly be ideal if law enforcement could maintain all evidence relevant to their investigations; however, given the representations that evidence of these controlled buys will not be introduced at trial and very little evidence concerning the CI's involvement will be introduced at trial, the relevance of these recordings (and the potential need to obtain alternative testimony about these controlled buys) is largely tempered.

informant – are similar to the facts of this case where a search warrant was executed and Defendant's own confession, along with drugs found in Defendant's home, form the backbone of the Government's case. Instead, in the cases upon which Defendant relies, the confidential informant's involvement formed most or all of the basis for the charges eventually brought, the confidential informant was a direct participant in the exact crimes charged, and there was little other evidence substantiating the defendant's criminal activity outside of activities engaged in with the confidential informant. *See, e.g., Gilmore v. United States*, 256 F.2d 565, 566 (5th Cir. 1958) (identity of confidential informant needed to be revealed because he "had considerable to do in this claimed sale and purchase" and had "set the stage" by informing law enforcement of the defendant and facilitating the transaction); *United States v. Conforti*, 200 F.2d 365, 366 (7th Cir. 1953) (the confidential informant conducted all communications and transactions with the defendant and the police merely conducted surveillance of defendant at the place of the transactions).

In *Portomene v. United States*, 221 F.2d 582 (5th Cir. 1955), a case Defendant appears to allege is most similar to the circumstances in this case, the defendant testified at trial that he believed he knew the identity of the confidential informant and there was bad blood between the two that gave rise to the confidential informant's motive for making false charges against the defendant. *Id.* at 583. In that case, the identity of the confidential informant "was material to the defense" and should have been disclosed. *Id.* The defense in *Portomene*, however, was that the confidential informant had given willfully false information and that the defendant had no involvement in dealing in or selling the narcotics at issue in the charges, and it is thus opposite from the instant case which involves Defendant's admissions as to his drug activity. Morever, the evidence Defendant claims demonstrates a personal grudge or vendetta is not very convincing, as the brief transcript of the lone audio recording could also be read as merely indicating the CI's interest in getting a known drug-

dealer off the street for a long time. More importantly, however, any "grudge" or "vendetta" the CI may have had against Defendant appears largely irrelevant given the additional non-CI related evidence the Government plans to introduce against Defendant, and disclosure of the CI would therefore not be particularly helpful or necessary for a fair trial.[7]

As for the final factor, the government's interest in non-disclosure, disclosure is generally not ordered where the confidential informant would be in personal danger, *see Sharp*, 778 F.2d at 1186, or when the "public interest in protecting the flow of information to the government" outweighs the need for disclosure, *see Dexta*, 136 F. App'x at 904. The Government presented no evidence (or argument) as to its interest in protecting the CI from disclosure. Although the Court heard no evidence on any particular danger to the CI or the CI's involvement in providing law enforcement with other information, the privilege against disclosure of a confidential source – in and of itself – recognizes the need to preserve anonymity to persons communicating knowledge of the commission of crimes. Therefore, this factor also weighs against disclosure.

After weighing all of the factors, I **CONCLUDE** the Defendant failed to meet his burden to show disclosure of the CI would be helpful to the defense or is necessary to afford him a fair trial.

## III.   CONCLUSION

For the reasons outlined above, Defendant's motion for disclosure [Doc. 23] is **DENIED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Defendant indicated during the hearing that he was not pursuing an entrapment defense.